**BATTLE FOWLER, as Receiver and Liqui-dating Trustee of Brignoli, Curley & Roberts Associates, Plaintiff,**

**v.**

**Richard J. BRIGNOLI, Arie E. David and Brignoli Models, Inc., Defendants.**

**No. 89 Civ. 8168 (MP).**

United States District Court, S.D. New York.

June 18, 1991.

---

Raymond J. Soffientini, Battle Fowler, pro se.

Steven G. Storch, Munves, Tanenhaus & Storch, New York City, for defendants Richard J. Brignoli and Brignoli Models, Inc.

## OPINION AND DECISION

MILTON POLLACK, Senior District Judge.

Plaintiff Battle Fowler, as Receiver and Liquidating Trustee of Brignoli, Curley & Roberts Associates ("BCR"), has filed suit to recover certain sums paid by BCR to defendants. The Receiver moved for an order pursuant to Rule 56 Fed.R.Civ.P. granting plaintiff summary judgment on three of the four Claims for Relief. For the reasons appearing hereinafter and pursuant to Rule 54(b) Fed.R.Civ.P., summary judgment is granted on the First and Second Claims for Relief and is denied on the Fourth Claim for Relief.

### Background

A derivative action entitled *Curley v. Brignoli Curley & Roberts Assoc.*, 88 Civ. 5307(MP) (the *"Curley* Action") was brought by certain limited partners of BCR against Richard Brignoli; Brignoli & Curley Inc. ("BCI"); and BCR as a necessary party. BCI was BCR's corporate General Partner. Richard Brignoli was majority shareholder, Chief Executive Officer, President and Chairman of the Board of BCI. *Curley v. Brignoli, Curley & Roberts Assoc.*, 746 F.Supp. 1208, 1210–11 (S.D.N.Y. 1989), *aff'd*, 915 F.2d 81 (2d Cir.1990).

This Court in its post-trial Opinion of August 4, 1989 removed BCI as General Partner of BCR after finding "Richard Brignoli ... has been guilty of and has caused BCI to be guilty of such crass and autocratic conduct in the service of his selfish interest and in derogation of the interests of the limited partnership so as to affect prejudicially the carrying on of the business as a partnership.... The evidence adduced at trial amply established glaring misconduct by Brignoli and BCI." *Id.* Furthermore, this Court found BCR suffered substantial damage as a result of Brignoli's disloyalty including a forfeiture of a $175,000 certificate of deposit and excessive or unwarranted payments to Brignoli and Brignoli Models, Inc. ("BMI"), and that from the time Brignoli fired Cur-

ley as BCI's chief officer in December 1987, Brignoli operated BCR to serve only his self-interest until BCI's removal as General Partner in August 1989. *Curley*, 746 F.Supp. at 1215–19.

After a vote in favor of dissolution, the Court entered judgment dated August 28, 1989 ordering dissolution of BCR and appointed Battle Fowler as Receiver.

The Court of Appeals dropped BCR as a party, recharacterized the action as a class action, and affirmed the District Court's decision on the merits. *Curley v. Brignoli, Curley & Roberts Assoc.*, 915 F.2d 81 (2d Cir.1990).

The Receiver filed the complaint in this action on December 8, 1989 seeking the following relief:

1) First Claim for Relief—against Brignoli for all salary paid Brignoli by BCR while he was in breach of his fiduciary duties, in the amount of $369,229;

2) Second Claim for Relief—against Brignoli for reimbursement of legal costs paid by BCR for the benefit of Brignoli in connection with the *Curley v. Brignoli*, 88 Civ. 5307(MP), action, in the amount of $367,337.03;

3) Third Claim for Relief—against Arie David for reimbursement of payments made by BCR for legal services that were allegedly not performed, in the amount of $132,500.

4) Fourth Claim for Relief—against Brignoli and BMI, reimbursement in the amount of $159,342.66 for excessive payments made to BMI for "Stock Sleuth", a trading analysis computer program, by reason of Brignoli's self-dealing in engaging BMI.

The Receiver moves for summary judgment on the First, Second, and Fourth Claims for Relief.

### Analysis

I. Receiver's Standing and Availability of Collateral Estoppel

■ Defendants question the Receiver's standing to sue on behalf of BCR in this action since BCR was dropped as a party in the *Curley* Action and argue that the Receiver could only assert claims held by members of the class and not those held by the partnership itself. The gravamen of this assertion is the question whether the District Court had jurisdiction over the partnership in the *Curley* class action such that a Receiver could properly be appointed to represent the partnership's interests.

■ The Second Circuit's affirmance of this Court's August 4, 1989 Opinion on the merits after recharacterization of the *Curley* derivative action as a class action includes an affirmation of the District Court's appointment of a Receiver to administer the partnership's affairs. *Curley*, 915 F.2d at 92. In addition, a court has jurisdiction over an unincorporated association pursuant to Rule 23.2 Fed.R.Civ.P. on the basis of personal jurisdiction over the named class representatives. 7C C. Wright, A. Miller, M. Kane, *Federal Practice and Procedure: Civil 2d* § 1861 at 216 (1986) (citing cases). There is no question of this Court's personal jurisdiction over the named class representatives and therefore appointment of the Receiver to represent the partnership was appropriate. The Receiver has standing to pursue claims on behalf of BCR in this action.

■ Defendants' argument against employment of the collateral estoppel doctrine with respect to the issue of forfeiture confuses "issues adjudicated in a prior action" with "ultimate relief". Forfeiture is the ultimate relief sought in this action. The Receiver cited this Court's findings concerning the level and extent of misconduct and breach of fiduciary duty. These issues were actually litigated and decided at the Bench Trial preceding the August 4, 1989 decision, *Curley*, 746 F.Supp. at 1215–19; there was a full and fair opportunity for litigating these issues, *Id.* at 1213–14; and these issues were necessary to support the judgment of this Court, *Id.* at 1221–22. *Lawlor v. National Screen Service*, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955). Finally, the disposition of these issues at a Bench Trial does not preclude offensive use in a subsequent jury proceeding. *Parklane Hosiery v. Shore*,

439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

The Receiver's assertion of the collateral estoppel doctrine is therefore appropriate in this action with respect to this Court's previous findings regarding Brignoli's self-dealing.

## II. Recovery of Brignoli's Compensation

■ A general partner owes a fiduciary duty to the limited partners and is obligated to conduct the partnership's affairs with the utmost good faith, and loyalty. *Tucker Anthony Realty Corp. v. Schlessinger*, 888 F.2d 969, 972–73 (2d Cir.1989). The functions, rights and duties of partners are those of agents and the law of agency is applicable. *King v. Sarria*, 69 N.Y. 24 (1877); *Mitchell v. Reed*, 61 N.Y. 123 (1874); 16 N.Y.Jur.2d § 1377 at 87 (1981). If an agent is in breach of this fiduciary duty, a partnership may recover compensation paid to its agent during the period of disloyalty. *Wechsler v. Bowman*, 285 N.Y. 284, 34 N.E.2d 322 (1941); 3 N.Y.Jur.2d § 215 at 41 & n. 12 (citing cases). Where compensation is capable of apportionment, either as to time or as to specific tasks, the Second Circuit has interpreted the modern trend of New York law to require apportionment of forfeitures to periods of disloyalty. *Musico v. Champion Credit Corp.*, 764 F.2d 102, 112–14 (2d Cir.1985) (Pratt, C.J.).

■ Defendants argue, in effect, for the apportionment of salary to permit retention of compensation for every beneficial act Brignoli provided BCR, or alternatively, would want the Receiver to show that a particular biweekly period was a time of disloyalty or a time of benefit to BCR. Defendants cite no authority for the proposition that apportionment of compensation is required for beneficial services performed within a period of disloyalty. On the contrary, the Second Circuit in *Musico* noted an exception to compensation apportionment where "breaches of duty ... had tainted all the dealings between the parties" such that the old New York rule of absolute forfeiture was applicable notwithstanding benefits received by the principal.

*Musico*, 764 F.2d at 114 (citing *Trounstine v. Bauer, Pogue & Co.*, 144 F.2d 379, 383 (2d Cir.), *cert. denied*, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621 (1944)).

The "extreme level of gross misconduct and arbitrary management ... committed by Brignoli", found by this Court in its August 4, 1989 decision, had tainted all dealings with BCR from late 1987 through August 1989. *Curley*, 746 F.Supp. at 1221. Brignoli placed himself on BCR's payroll in January 1988, *Id.* at 1218; defendants do not dispute the amount of compensation paid to Brignoli in 1988 and 1989. The Receiver is entitled to summary judgment on the First Claim for Relief and shall recover the sum of $369,229 with interest from October 27, 1989 at the rate of 9% as provided by law.

## III. Recovery of Legal Fees Paid for the Benefit of Brignoli

■ Section 4.3 of the Partnership Agreement provides in relevant part:

The Partnership shall indemnity and save harmless the General Partner from and against any and all liability, loss, cost, expense or damage incurred or sustained in the conduct of the business of the Partnership within the scope of the authority conferred by this Agreement; provided, however, that the General Partner shall not be entitled to any indemnification in the event any such liability, loss, costs, expense or damage is incurred or sustained as a result of the General Partner's gross negligence, willful misconduct or recklessness.

*Curley*, 746 F.Supp. at 1220 (quoting Partnership Agreement).

Apportionment of fees between the third-party claims and the main breach of fiduciary duties action is unnecessary. The third-party claims overlapped with the affirmative defenses asserted by Brignoli and BCI and were part of the defense strategy of such defendants and not separate actions. *Curley*, 746 F.Supp. at 1213, 1220 ("BCI and BMI had mingled their third-party claims against Brick and Bennett with their counterclaims against the BCR limited partners"); Second, Third, Sixth Coun-

terclaims overlapped with Brick and Bennett claims).

Apportionment of legal costs as between BCI and Brignoli that were paid for the benefit of BCI and Brignoli is also unnecessary. The distinction between BCI and Brignoli is artificial since Brignoli is the majority shareholder of BCI, its Chief Executive Officer, President and Chairman of the Board. *Id.* at 1210–11. This Court had found that Brignoli committed his breach of fiduciary duty to BCR through the entity of BCI, *Id.* at 1221, and the Opinion does not differentiate between the acts of BCI versus the acts of Brignoli. Apportionment is, therefore, unnecessary between BCI and Brignoli.

Brignoli is not entitled to indemnification for legal costs pursuant to the terms of the Partnership Agreement and as a result of the Court's findings in its August 4, 1989 Opinion as to Brignoli's gross misconduct, bad faith and pursuit of self interest to the detriment of the partnership. Defendants do not dispute the total amount of legal fees paid by BCR in connection with the *Curley* Action. The Receiver is entitled to summary judgment on its Second Claim for Relief and shall recover in the amount of $367,337.03 with interest from October 27, 1989 at the rate of 9% as provided by law.

IV. Recovery of Overcharges for Stock Sleuth

 Testimony was provided by two experts at the Bench Trial in the *Curley* Action that Stock Sleuth could be recreated for a sum of $74,000 to $80,000. 746 F.Supp. at 1216. These figures did not include the expense of formulating the parameters for the study. *Id.* at n. 4. Whether $20,000–$26,000 (the difference between $100,000, the maximum figure urged by Receiver for the cost of the services, and the figures elicited at trial) is sufficient to cover the cost of formulating parameters of the study is a disputed issue of material fact. In addition, BMI was not a named party in the *Curley* Action. Offensive collateral estoppel is not available as to it unless the Court finds BMI was an alter ego of Brignoli. Such a finding was not mentioned in the *Curley* Opinion. Summary judgment is denied with respect to the Fourth Claim of Relief.

*Conclusion*

A judgment shall be entered in favor of Battle Fowler, as Receiver, who shall recover from the defendant Richard J. Brignoli the sum of $369,229 with interest thereon amounting to $54,534.62, together with $367,337.03 with interest thereon amounting to $54,255.18, and costs to be taxed by the Clerk.

It is expressly determined that there is no just cause for delay and the Clerk is directed to enter such judgment on the First and Second Claims for Relief in the Complaint in favor of plaintiff and against Richard J. Brignoli for said amounts pursuant to Rule 54(b) Fed.R.Civ.P.

SO ORDERED.